## Commonwealth v. Abbe Art Cinema

*Paul J. Duca,* Assistant District Attorney, for Commonwealth.

*Lewis Gordon,* for defendants.

ROSENWALD, J., May 25, 1972.—The above-captioned matter was assigned to this court on or about April 19, 1972. This court was informed that it was to view a film to determine whether or not the film was obscene. By letter dated April 20, 1972, the assistant district attorney informed this court that an adversary hearing would be held with myself presiding. The letter set forth that the "purpose of this hearing will be to determine whether or not a film, which will be seized tonight, is obscene."

On Friday, April 21, 1972, this court was informed that the above three defendants were arrested some time during the evening of April 20, 1972, and that defendants were released on their own recognizance at 5 a.m. on April 21, 1972. The court was further informed that the film could only be viewed at a private studio located at 1909 Buttonwood Street, Philadelphia.

The court convened at the studio at 1909 Buttonwood Street, Philadelphia, at approximately 10:30 a.m. on April 21, 1972. The court inquired at this time as to the posture of the matter. The court was informed that the film was seized on a search and seizure warrant and defendants were arrested on warrants which were signed by the Hon. William Markert, Judge of Municipal Court, after the warrants had been approved by Assistant District Attorney Charles Haddad. The three defendants were taken into custody at the Abbe Art Cinema (Martin Rendelman), the Art Holiday Theater (Albert Rovinsky), and the Walton Art Theater (Robert Cunningham). The ar-

rests and the seizure of the film were made on the evening of Thursday, April 20, 1972, and defendants were released on their own recognizance from the Police Administration Building in Philadelphia at approximately 5 a.m. on April 21, 1972. A trial date was set in the Municipal Court of Philadelphia for June 13, 1972. The charge which the defendants have to answer is "Obscene exhibition, 528 P. C."

The court was further informed that there was no petition or motion filed by the district attorney's office and now pending before the court in this matter. The court then inquired as to whether or not it had jurisdiction in view of the fact that there was no pending issue before it. After hearing argument, the court determined to view the film and to reserve any determination until such time as it researched the question of whether or not it had jurisdiction to hear the matter and to make any determination requested by the district attorney.

The court then viewed a film entitled "Keep the Ball Rolling." Upon completion of the film, the court then made an *informal* determination that the film was obscene, setting forth on the record the reasons for such determination. The effectiveness of the opinion was reserved, however, for reasons hereinafter set forth.

The court again heard argument as to whether or not the procedure taken by the district attorney's office was proper. This procedure was objected to by Lewis Gordon, Esq., attorney for defendants. The court questioned whether or not this could be an adversary proceeding when there had not been any pleadings filed and no motions of any kind had been made either by the Commonwealth or the defense. Since there were no pleadings or motions of record,

the court's right to determine any issues was in serious doubt. The court then requested counsel for both parties to present memoranda of law in support of their position.

A review of the respective memoranda of law was made and the court conducted its own intensive research with respect to the right of the court to determine the question of obscenity.

The court, upon due consideration, has concluded that since there were no pleadings or motions filed by either party, it had no issues before it and, therefore, could not properly issue an effective opinion concerning the question of obscenity. The court, in effect, was being asked to render an advisory opinion which it had no right to do.

From a review of all the law concerning this type of action, it is suggested to the district attorney's office that henceforth in obscenity matters, the district attorney should file a petition for rule to show cause why a warrant of arrest should not be issued and why a search and seizure warrant should not be issued. The petition and rule to show cause should set forth a prayer requesting the court to order defendants not to dispose of the film or to remove the film from the jurisdiction of the court pending a determination of the petition and order, and to make such film available for view to the court.

In the event that the district attorney does not desire to take this procedural vehicle in order to have a determination by the court, it should then, immediately after the arrest and seizure of the film, file a petition and order to show cause why the film should not be confiscated. In the opinion of the court, either procedure should satisfy the requirements of an adversary proceeding.

Since neither of these procedural vehicles were taken by the district attorney's office, the court cannot make any effective determination.

## ADDENDUM

ROSENWALD J., May 26, 1972.—Subsequent to a publishing of the memorandum opinion there was some colloquy among the assistant district attorney, defense counsel and the court regarding matters involving obscene films. The court had suggested that the district attorney file with the court a petition and a rule to show cause why a warrant of arrest should not be issued in these matters, and that the petition set forth therein a prayer requesting the court to order defendants not to dispose of the film to remove the film from the jurisdiction of the court, pending a determination of the petition and order, and to make such film available for view to the court. The assistant district attorney argued that defendant could refuse to produce the film on the ground that it would be a violation of their rights under the fifth amendment. The court suggested to the assistant district attorney that the persons whose arrest should be sought were the owners of the various theatres who are, in fact, the exhibitors. It is not the managers or the projectionist in the theatre who is the responsible party for the exhibition of the motion picture. Further, it was suggested by the court that contemporaneously with the filing of the petition and rule to show cause a subpoena duces tecum be issued directing the manager of the theatre to produce the film for viewing by the court.